Ashburn, J.
On the death of his wife, Smith Hall, defendant in error, commenced his action to recover possession of the forty-live acres of land in controversy. He ■claims to derive his right to recover as tenant by curtesy.
It is couceded.by plaintiff in error that, by virtue of the judgment of the court in the creditors’ action, obtained in 1868, wherein it was determined that Angeline M. Hall, wife of Smith Hall, had a separate estate in and to the land in controversy, plaintiff below had an estate by •curtesy, unless defeated by the contract of October, 1866, and the acts of the parties. And this would be the result whether the effect of the judgment, in the action of the ■creditors of Smith Hall against him, was to convey a fee simple title to Angeline M. Hall for the forty-five acres, or raise a trust estate in Julia A. Clark for her.
Counsel have discussed several legal questions with marked ability. As we view the case, its merits can be clearly ascertained, and the rights of the parties be easily determined.
Angeline did not unite with her husband in the deed, conveying the one hundred and ninety-seven acres to Julia A. Clark. But afterward, when the agreement was made that Joseph should undertake the support and maintenance of Smith Hall and his wife, and have a conveyance for the land, she agreed to unite in the conveyance to Joseph. No conveyance, however, was ever made to him, for the reason that, soon after this agreement, the creditors of Smith Hall commenced their action against all the parties connected with the various transactions, charging that the deed to Julia A. Clark was made to hinder and delay the creditors of Smith Hall, and in fraud of their rights. The creditors obtained a judgment, in their favor, and caused all the land *192 to be sold in satisfaction of their claims, except the land in' contest. In that proceeding the court “ found and ad-2 udged therein as to the forty-five acres of said land, being the land mentioned in the petition herein, that the same were purchased and paid for with the separate money and means •of the said Angeline M. Hall,” etc.; and that the title thereto was held by said Smith Hall in trust for her; and the court ordered him to convey the same to her, and that, in default thereof, said judgment should operate as such conveyance. No conveyance was made. In this way this land was saved to her from the wreck of her husband’s estate, and the land freed in her hands from all contracts against him. Joseph, however, carried out the understanding between himself and his mother, and in consideration thereof she devised to him the forty-five acres, of which he-retained the possession.
Plaintiff in error claims tbat whatever estate Smith Hall had in the land, whether in his personal or marital right, he was obligated, in equity, by the contract of 1866, to convey to Joseph N. Hall; that as this equitable obligation rested upon him at all times thereafter, equity will hold that as done which in good conscience he should have done; and that the transaction should be now treated as so far executed as to bar him from a recovei’y based on the uon-exccution of that which ought to have been executed. Practically, it is claimed, the court has found that Joseph N. was entitled to have a deed for the land from Smith Hall in 1866; that the equitable obligation existed at the time-this action was commenced, and operates as an equitable estoppel.
As we understand the controlling facts in this case,, plaintiff in error is not entitled to the benefit of this rule of equity. He who invokes its aid must be free, in relation to the transaction, from serious fault — must have performed on his part, or satisfy the court that he was at all times ready, willing, and able to perform the agreement on-his part. This consideration requires that we should consider and apply some of the facts of the case.
*193 Joseph N. Hall, in his answer and counterclaim to the petition of Smith Hall for damages, states that prior to January 20,1870, by reason of the “violent and outrageous language and conduct” of Smith Hall “toward defendant and his family,” he was fully justified “ in refusing to longer perform” the contract of supporting Smith Hall, “ on his part, even if he had otherwise been bound to do so.” He further states “ that by reason of the pi-emises, the defendant was no longer bound to perform his part of said contract, and of which he notified plaintiff previous to said January 20, 1870.” At this date Smith Hall left the house of Joseph N. Hall; treated the contract between them as at an end, by each failing to perform, and each claiming the other had failed to perform. Soon thereafter the plaintiff commenced an action against defendant for damages arising out of the alleged breaches of the contract on the part of defendant. In that action all questions that could arise as to the rights and liabilities of the parties, growing out of the contract of 1866, were put in issue, and determined in favor' of the plaintiff. To us the conclusion seems inevitable from the facts, that about January 20, 1870, the contract was mutually abandoned. Erom that date on, until the commencement of this’action, the parties treated the contract as rescinded, and occupied toward each other such a relation that, in equity, neither could have enforced a specific performance of the contract. Hence no equitable bar interposed to defeat plaintiff’s right to assert his estate by the curtesy.

Judgment affirmed.